UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

**In re:**

**TURKEY LAKE, LLC, et al.**,

*Debtors*,

**ANTHONY GIORDANO, TRUSTEE**,

*Plaintiff*,

    *-vs-*

**RIZZO, DIGIACCO, HERN & BANIEWICZ CPAS, PLLC**,

*Defendant*.

Chapter 11

Case No.: 15-12091 (REL)

(Jointly Administered)

Adv. Proc. No.: 17-90063-1-rel

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY JAMES I. MARASCO, CPA/CFF, CFE, CIA

**BARCLAY DAMON LLP**
*Attorneys for Defendant*
2000 Five Star Bank Plaza
100 Chestnut Street
Rochester, New York 14604
Telephone: (585) 295-4311

Jeffrey A. Dove
Thomas B. Cronmiller
Roy Z. Rotenberg
 *Of Counsel*

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ............................................................................................2

**FACTUAL RECITATION** ..................................................................................................2

**ARGUMENT** ........................................................................................................................2

    I.    The Trustee's Complete Failure to Satisfy The Three Prong Test to Determine Disqualification of An Expert Warrants Dismissal of The Instant Motion ..................................................................................................................2

        1.    Confidential Relationship ..........................................................................3

        i.    Any Ambiguity Regarding Whether There Was A Confidential Relationship should be Resolved in Favor of The Defendant ..............................................................................................6

        C.    Confidential Disclosure ...........................................................................6

        D.    Public Policy ............................................................................................7

        E.    Plaintiff's Claim of Swithching Sides .....................................................10

        F.    Plaintiff's Cases Are Inapposite ...............................................................10

**CONCLUSION** .....................................................................................................................11

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted on behalf of Defendant Rizzo, DiGiacco, Hern & Baniewicz, CPAs, PLLC ("Defendant"), in opposition to Anthony Giordano, Trustee's ("Trustee")  motion seeking to disqualify Defendant's expert, James I. Marasco, CPA/CFF, CFE, CIA.

## FACTUAL RECITATION

Defendant respectfully refers to the Declarations of Thomas B. Cronmiller dated February 3, 2021 and the Declaration of James I. Marasco, CPA/CFF, CFE, CIA dated February 2, 2021 for a full and complete recitation of the facts relevant to this motion, which are incorporated herein by reference.

## ARGUMENT

**THE TRUSTEE'S COMPLETE FAILURE TO SATISFY THE THREE PRONG TEST TO DETERMINE DISQUALIFICATION OF AN EXPERT WARRANTS A DISMISSAL OF THE INSTANT MOTION**

Courts employ a three part test to determine whether an expert should be disqualified: 1) was it objectively reasonable for the first party who *retained* the expert to conclude that a confidential relationship existed; (2) was any confidential or privileged information disclosed by the first party to the expert; and (3) does the public have an interest in allowing or not allowing the public to testify.  *Grioli*, 395 F.Supp.2d 11 at *14 (E.D.N.Y. 2005).  The Trustee has completely failed to satisfy any of these factors in order to warrant disqualification of Mr. Marasco.

"Nothing in the Federal Rules limits the right of a party to call as its expert witness a person who might have been consulted by an opposing party."  *Mays v. Reassure America Life Ins. Co*., 293 F.Supp.2d 954,956-957 (E.D. Ark. 2003) *citing Procter & Gamble Co. v. Haugen*, 184 F.R.D. 410, 412-413 (D. Utah 1999).  Thus, while federal courts have the inherent power to disqualify an

expert witness, the instances of expert disqualification are rare and "courts have not developed the kind of bright line rules for expert disqualification as there are in attorney conflict cases." *Grioli v. Delta Int'l Mach. Corp.*, 395 F.Supp.2d 11 (E.D.N.Y. 2005) *citing Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996). Since the Trustee has failed to demonstrate his single meeting with Mr. Marasco was anything more than a consultation, the instant motion is wholly without merit and must be dismissed.

**<u>Confidential Relationship</u>**

"A court may disqualify an expert only where there is 'persuasive evidence that a lawyer was objectively reasonable in assuming the existence of a confidential relationship.'" *Breitkopf* v. *Metro Transp. Auth. Police Officer Glenn Gentile*, 2014 U.S. Dist. LEXIS 205091, *16 (E.D.N.Y. 2014). Like the Trustee in this case, "[a] party seeking disqualification may not meet its burden with 'mere conclusory or *ipse dixit* assertions.' *Id. citing Eastman v. Kyocera Corp*., 2012 U.S. Dist. LEXIS 132436, *24 (W.D.N.Y. 2012).

In assessing whether a confidential relationship existed, courts consider several factors including 1) the existence of a *confidentiality agreement* between the party and the expert; 2) the extent to which the expert received a party's confidential information such as attorney work product or whether the expert had access to the party's confidential information; 3) the length of the relationship; 4) evidence of contemporaneous documentation that confidential information had been provided to the expert; and (5) payment of a fee. *Id*. at *16; *see also Hinterberger v. Catholic Health Sys., Inc.*, 2013 U.S. Dist. LEXIS 73143 *57-58 (W.D.N.Y. 2013).

In *Mayer v. Dell,* 139 F.R.D. 1* (D.D.C. 1991), Plaintiff sought to disqualify a certified public accountant and his firm from acting as defendant's consulting or testifying witness alleging that plaintiff's counsel and the accountant had a confidential relationship and that "sensitive work

product information about plaintiff's case" was disclosed.  *Id.*   In concluding that it was not

reasonable for the plaintiff to conclude that a confidential relationship existed between plaintiff's

counsel and the accountant, the court found:

> Plaintiff's counsel never proffered a confidentiality agreement for Mr.
> Little's consideration nor sent a letter after their ***single*** meeting confirming
> any understanding regarding confidentiality; indeed, counsel in her
> contemporaneous notes of the meeting, memorialized neither a request of
> Mr. Little for confidentiality nor any acknowledgement by Mr. Little of
> any such request.  Plaintiff's counsel, at the meeting, neither proffer to Mr.
> Little any document relevant to the case other than the complaint, nor
> sought to utilize his services.  The evidence offered by plaintiff thus
> warrants the conclusion that plaintiff's counsel's single meeting with Mr.
> Little and his associate was no more than a consultation to permit both
> plaintiff and Mr. Little to determine whether Mr. Little might later be
> retained.

*Id*. at *3.

Here the facts are strikingly similar to those in *Maye*r and it must be concluded that no

confidential relationship existed between the Trustee, Ms. Bass and Mr. Marasco.  *See generally,*

*Mayer v. Dell*, 139 F.R.D. 1 at *3 (D.D.C 1991).  There simply was no relationship, confidential

or otherwise.  At most, there was an informal consultation, for which Mr. Marasco was never

retained or paid.  *Breitkopf*, 2014 U.S. Dist. LEXIS 205031 at * 22.

Ms. Bass wrongly claims that in his Engagement Letter with Barclay Damon, Mr. Marasco

"told the firm he had previously met with Plaintiff's counsel."  *See* Bass Declaration at ¶ 13.

However, Mr. Marasco's Engagement Letter in fact says  that "[w]e have disclosed that former

counsel (LeClairRyan) for the debtor discussed potentially retaining our services in 2016, but that

never came to fruition."  *See* Exhibit "A" to the Bass Declaration.   Ms. Bass, at the time, was

associated with LeClairRyan, and represented the debtor, Turkey Lake **not** the Trustee.   In

addition, Mr. Giordano is the Unsecured Creditor Trustee, whose appointment wasn't confirmed

until March 16, 2016.  Therefore, even if there was a relationship, confidential or otherwise, any

possible expectation of confidentiality would belong to the debtor, Turkey Lake, not to the Trustee, Mr. Giordano.

Notwithstanding, Mr. Giordano, Ms. Bass and Mr. Marasco had a single meeting in May 2016, prior to the instant lawsuit being filed, during which time neither Giordano nor Ms. Bass told Mr. Marasco that any discussions were confidential, nor did anyone request that Mr. Marasco sign a confidentiality agreement. Further, although Mr. Giordano maintains that he also had a telephone call with Mr. Marasco in March 2016, that conversation purportedly occurred before Mr. Giordano was confirmed as Trustee. That communication was and could not have been confidential; Mr. Giordano was neither a client of Mr. Marasco nor had he retained him as an expert. Conspicuously absent from Mr. Giordano's declaration is any affirmative statement that he told Mr. Marasco that the telephone communication was to be kept confidential. Rather, without any reference to any case law, Mr. Giordano unilaterally and mistakenly concludes that anything discussed during the telephone call would remain confidential because he is "familiar with an accountant's obligation to maintain confidential information." *See* Giordano Declaration at ¶4; *see Breitkopf,* 2014 U.S. Dist. LEXIS 205091 at *16 *citing Gordon v. Kaleida Health*, 2013 U.S. Dist. LEXIS 73334, *42 (W.D.N.Y. 2013) (communications between a party or counsel and an expert carry no presumption of confidentiality); *see also Hewlett-Packard*, 330 F.Supp.2d 1087, 1094 (N.D. Cal. 2004 (same); *see also United States v. Adlman*, 68 F.3d 1495 (2nd Cir. 1995) (generally communications between accountants and their client do not enjoy the privilege shared between an attorney and client prohibiting an attorney from disclosing confidential communications).

Mr. Giordano isn't an expert nor does or can he offer expert proof about an accountant's duty to maintain confidential information. There was nor is any duty on the part of Mr. Marasco

to maintain alleged confidential information under these circumstances.  In fact, there is no allegation that Mr. Marasco was engaged as the Trustee's accountant.  Further,  it was Turkey Lake, not the Trustee, who was potentially seeking to retain Mr. Marasco in 2016.  The Trustee was neither a client of Mr. Marasco nor had he retained Mr. Marasco's services. Any contention to the contrary is baseless.

Mr. Marasco confirms that nothing confidential was discussed nor did he receive any confidential information.  Neither Giordano's detailed time entries nor any other evidence has been offered, even for in camera review, to demonstrate that confidential information was disclosed to Mr. Marasco.  *See Mayer v. Dell*, 139 F.R.D. at *2.  Rather, it is evident that after the single encounter, neither Mr. Giordano nor Ms. Bass ever contacted Mr. Marasco again nor did they ever pay him any fee.  Based on this proof, this Court must conclude that Giordano and Ms. Bass have failed to meet their burden of demonstrating that they had an objectively reasonable belief that a confidential relationship existed with Mr. Marasco.  *Breitkopf*, 2014 U.S. Dist. LEXIS 205091 at *21.

### i.    Any Ambiguity Regarding Whether There Was A Confidential Relationship Must be Resolved in Favor of The Defendant

"Lawyers are in the best position to develop[] mechanisms to assure that both they and the expert have a clear and unambiguous understanding that a confidential relationship has been created." *Mays v. Reassure Am. Life Ins. Co.*, 293 F.Supp.2d at 958.  It is the attorney who will continually face this issue with experts and have the legal background and experience allowing them to anticipate potential problems in the future.  *Id.*  Attorneys "know the rules by which everyone must play."  *Id.*  "Therefore, because lawyers seeking to invoke the confidential relationship have the knowledge, experience, and the ability to avoid conflict, it is appropriate that

the consequences for failing to take the necessary precautionary measures should fall upon them."

*Id*. citing *Wang Laboratories, Inc. v. Toshiba Corp*., 732 F.Supp 1246, 1248 (E.D. Va. 1991).

Here, it was incumbent upon Ms. Bass to clearly and unambiguously communicate to Mr. Marasco that it was her intention to create a confidential relationship.  She could have told Mr. Marasco that all communications were to remain confidential; she could have requested Mr. Marasco sign a confidentiality agreement; she could have done a number of things to ensure that she and Mr. Marasco had an agreement of confidentiality.  Ms. Bass did nothing, including never contacting Mr. Marasco again following the meeting.

Accordingly, even if this Court were to determine that there was some ambiguity in terms of whether there was a confidential relationship between the Giordano, Ms. Bass and  Mr. Marasco, though it is evident there was no relationship at all, any ambiguity should be resolved against the Trustee.  *Id*.

**Confidential Disclosure**

There is no proof that Mr. Marasco ever received confidential information or that he discussed anything confidential with Mr. Giordano and Ms. Bass.  Mr. Giordano relies on Ms. Bass's Declaration which offers only vague, unsubstantiated assertions that during the May 2016 meeting "confidences regarding litigation strategy and attorney work-product were disclosed and discussed."  *See Bass* Declaration at ¶4.  Courts have held that statements that legal strategies, tactics, legal theories and opinions were discussed "are conclusory in nature and are thus not sufficient to show that confidential information was disclosed."  *Breitkopf*, 2014 U.S. Dist. LEXIS 205091 at  *23.  It is the Trustee's burden to identify "specific and unambiguous disclosures that if revealed would prejudice the party."  *Id*. at *24 *citing Kyocera Corp*., 2012 U.S. Dist. LEXIS 132436 at *8.  Mr. Giordano and Ms. Bass could have requested permission to file a portion of

6

their affidavits, *ex parte* to specifically detail to the Court the information they maintain "deserves

protection under the work product doctrine." *Breitkopf*, 2014 U.S. Dist. LEXIS 205091 at *24.

Without more, Giordano's conclusory assertions are insufficient to meet his burden of

demonstrating disclosure of confidential information. *See, Mayer v. Dell*, 139 F.R.D. 1 at *4

(holding discussion of plaintiff's strategy in litigation, the kinds of experts [plaintiff] expected to

retain, plaintiff's view of the strengths and weaknesses of each side, the role of each of the

plaintiff's experts to be hired and anticipated defenses did not reveal privileged information); *see*

*also, Breitkopf*, 2014 U.S. Dist. LEXIS 205091 at *25 (holding discussion of facts of the case with

experts and potential claims of the action would not, without disclosure of specific related attorney

work product, constitute a disclosure of confidential information).

### Public Policy

Courts balance competing policy objectives in determining whether an expert should be

disqualified:

> The policy objectives favoring disqualification include preventing conflict
> of interest and maintaining the integrity of the judicial process. The main
> policy objectives militating against disqualification are ensuring that
> parties have access to expert witnesses who possess specialized
> knowledge and allowing experts to pursue their professional calling.
> Courts have also expressed concern that if experts are too easily subjected
> to disqualification, unscrupulous attorneys and clients may attempt to
> create an inexpensive relationship with potentially harmful experts solely
> to keep them from representing the opposing party.

*Mays v. Reassure Am. Life Ins. Co.,* 293 F.Supp.2d at 957.

Here, there was no relationship, confidential or otherwise, nor was confidential information

conveyed or provided to Mr. Marasco.  Ms. Bass makes no showing whatsoever as to how

Giordano will be prejudiced by allowing Mr. Marasco to continue as the Defendant's expert.  Mr.

Marasco is a rebuttal expert.  The opinions offered in his report are in response to and counter the

opinions of Giordano's experts, Messrs. Castor and Salomon.  As Mr. Marasco outlines in his report, the documents on which he relied in rendering his opinions were produced during the course of discovery and therefore not confidential.  Neither Giordano nor Ms. Bass make any showing that Mr. Marasco learned or acquired confidential information during the May 2016 meeting, and even if he did, they fail to show how whatever purported confidential information he learned had any impact whatsoever on his opinion.  Therefore, there  simply is  no conflict of interest nor can it be said that that the "integrity of the judicial process [will] be jeopardized" by allowing the Defendant to retain Mr. Marasco as an expert.  *Id*. at 957.

Finally, in balancing equities and with an eye toward maintaining the integrity of the judicial process, the Court should consider Ms. Bass's conduct.  Ms. Bass became aware that Mr. Marasco was Defendant's expert  on December 3, 2020.  However, at no time thereafter did Ms. Bass (or the Trustee) raise any objections nor did she reach out to the Defendant's legal counsel to express her objections concerning Mr. Marasco's retention.  Rather, Ms. Bass proceeded to depose Mr. Marasco on January 15, 2021 for seven hours, again voicing no objections at all on the record or any claim to the existence of a confidential relationship between herself, the Trustee and Mr. Marasco.  Then, within days of Mr. Marasco deposition, Ms. Bass filed the instant motion.  This disingenuous conduct is nothing more than an attempt to establish a feigned relationship between the Trustee, Ms. Bass and Mr. Marasco in an effort to deprive the Defendant from continuing its relationship with Mr. Marasco.  Such conduct, with the sole purpose of prejudicing the Defendant cannot be tolerated.

Accordingly, the Trustee's motion to disqualify Mr. Marasco must be dismissed.

## Plaintiff's Claim of "Switching Sides"

For all the reasons set forth in the preceding paragraphs, and simply because Mr. Marasco was never on the Trustee's "side" and never had any relationship with the Trustee or Ms. Bass, it is absurd to even suggest that Mr. Marasco switched sides.

## Plaintiff's Cases Are Inapposite

Plaintiff's reliance on *Brunstad v. Medtronic Inc*., 2015 U.S. Dist. LEXIS 56985 (W.D. Wis. 2015) is misplaced.  The facts in *Brunstad* are distinguishable as the case involves purported allegations of the failure of a Medtronic insulin pump resulting in death .  Whereas here, Mr. Marasco was not a former employee nor had any relationship whatsoever with the Trustee and Ms. Bass, never received confidential information and never signed a confidentiality agreement. In *Brunstad*, plaintiff's expert previously worked as vice president of research and development for defendant, worked on the product line at issue in the case, received confidential information regarding the same and entered into a confidentiality agreement with defendant.  In light of these facts, the Court concluded that disqualification was warranted.

Similarly, Ms. Bass cites *Pellerin v. Honeywell Int'l Inc*., 2012 U.S. Dist. LEXIS 3781 (S.D. Cal. 2012) for the proposition that "an expert such as Mr. Marasco cannot separate confidential information learned from Plaintiff during the course of later litigation because the human brain does not compartmentalize information in that manner."  While Ms. Bass seemingly attempts to apply this rational generally to all experts, that was not the court's intention in *Pellerin*. Similar to *Brunstad*, in *Pellerin*, a trade secret misappropriation case, plaintiff's expert was a former employee[1] of the defendant who signed a confidentiality agreement and acquired

---

[1] Plaintiff's expert was previously employed as Defendant's Product Development Engineer, Product Development Manager and Senior Product Development Engineer in Honeywell's Research and Development Division where he was responsible for "industrial design engineering of hearing protection products and related manufacturing processes..."  *Pellerin v. Honeywell Int'l Inc*., 2012 U.S. Dist. LEXIS 3781 (S.D. Cal. 2012).  Defendant's

information pertinent to the litigation.  In considering the expert's former role at Honeywell and the confidential information he acquired that was pertinent to the litigation, the court noted that "there [was] a substantial risk he may inadvertently use confidential information he is contractually barred from disclosing to *Pellerin* in his expert role." *Id*. at *9.  Mr. Marasco, unlike the expert in *Pellerin* is not a former employee, who signed a confidentiality agreement and acquired confidential information during the course of a relationship.  Mr. Marasco had no relationship with Giordano or Ms. Bass; he never acquired any confidential information; and he never signed a confidentiality agreement.  Accordingly, as *Pellerin* is inapplicable to the facts of this case, Giordano's reliance on it is misplaced.

Finally, Ms. Bass's cites to *Hempstead Video, Inc. v. Village of Valley Stream*, 409 F.3d 127 (2nd Cir. 2005).  This case involved plaintiff's motion to disqualify the Defendant's counsel not an expert.  Since the rules for disqualification of an attorney and experts are distinct, the *Hempstead* case should not even be considered.  *See generally*, *Grioli v. Delta Int'l Mach. Corp.*, 395 F.Supp.2d 11 (E.D.N.Y. 2005) (holding courts have not developed the kind of bright line rules for expert disqualification as there are in attorney conflict cases).

Since Trustee has failed to demonstrate the existence of a confidential relationship and disclosure of confidential information, his motion seeking to disqualify Mr. Marasco must be dismissed.

## **CONCLUSION**

**WHEREFORE**, Defendant, Rizzo, DiGiacco, Hern & Baniewicz, CPAs, PLLC, respectfully requests that this Court deny the Trustee's motion seeking to disqualify James

---

counterclaim against Plaintiff alleged misappropriation of its trade secrets in the production of plaintiff's disposable and reusable hearing protection.  *Id*. at *2.

Marasco, CPA/CFF, CFE, CIA, EFPR Group CPAs, PLLC and StoneBridge Business Partners as

Defendant's expert.

Dated:          February 3, 2021
                Rochester, New York                    **BARCLAY DAMON LLP**

                                                       By:    /s/ Thomas B. Cronmiller
                                                              Thomas B. Cronmiller
                                                              Bar Roll: #301307

                                                              Roy Z. Rotenberg
                                                              Bar Roll #506657

                                                              Jeffrey A. Dove
                                                              Bar Roll #101532

                                                       Attorneys for Defendant
                                                       Office and Post Office Address
                                                       100 Chestnut Street, Suite 2000
                                                       Rochester, New York 14604
                                                       Telephone: (585) 295-4424
                                                       Email: rrotenberg@barclaydamon.com