UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

In re:

TURKEY LAKE, LLC, I

*Debtors*,

Chapter 11

Case No. 15-12091 (REL)

(Jointly Administered)

**ANTHONY GIORDANO, TRUSTEE**,

*Plaintiff*,

-*vs*-

**RIZZO, DIGIACCO, HERN & BANIEWICZ CPAS, PLLC**,

*Defendant*.

Adv. Proc. No. 17-90063-1-rel

**DECLARATION OF THOMAS B. CRONMILLER IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY THE DEFENDANT'S EXPERT, JAMES I. MARASCO**

Thomas B. Cronmiller, in accordance with 28 U.S.C. § 1746, declares as follows under penalty of perjury:

1. I am a partner in the law firm of Barclay Damon LLP, attorneys for Defendant Rizzo, DiGiacco, Hern & Baniewicz, CPAs, PLLC ("Defendant"), in the above-captioned action. I am familiar with the facts, circumstances, and documents referred to herein.

2. I submit this Declaration in further opposition to Anthony Giordano, Trustee's ("Trustee") motion seeking to disqualify the Defendant's expert witness, James I. Marasco, CPA/CFF, CFE, CIA as Mr. Marasco was never engaged or retained by the Trustee in any capacity whatsoever.

3. Ms. Bass's reply declaration consists of nothing more than misleading misrepresentations. Ms. Bass distorts Mr. Marasco's testimony by extracting limited portions of his testimony that she wishes the court to view in a vacuum, rather than pointing out to the court Mr. Marasco's full testimony.

4. There is absolutely nothing in Mr. Marasco's testimony that remotely evidences that he was working with or had any engagement with the Trustee or Ms. Bass. In fact, Ms. Bass did nothing to express what her intentions or expectations were with respect to the meeting she had with Mr. Marasco. Rather, Mr. Marasco characterized his understanding of the meeting with Ms. Bass and Mr. Giordano as one to discuss *potentially* retaining his services on a case.

> Q. So in connection with the meeting you would have taken with me, I'm not sure what you thought the ground rules were that--- for that meeting. Do you recall?
>
> MR. CRONMILLER: Object to form.
>
> A. The ground rules? We were having a discussion about potentially retaining me on a case.

*See* Exhibit "A" to the Bass Reply Declaration at p.74.

5. Mr. Marasco confirmed that he met with Ms. Bass and Mr. Giordano, but that he never heard back from Ms. Bass.

> Q. Do you remember the first time we met?
>
> A. Yes.
>
> Q. And when was that?
>
> A. 2016, I believe.
>
> Q. Okay. And in what context did we meet?
>
> A. I believe you asked if I would consider working on this particular engagement?
>
> Q And what was your response?
>
> A. I don't recall***. I never heard back?***[1]

[1] Anything contained in this Declaration that is in bold and italicized signifies emphasis added by the Defendant.

Q. Is it possible that in the spring of 2016 you participated in a meeting with myself and Mr. Giordano?

A. Yes.

Q. Is it possible we would have disclosed to you confidential information during that meeting?

MR. CRONMILLER: Form objection.

A. I don't recall. You may have, you may not have. I don't recall.

*See* Exhibit "A" to the Bass Reply Declaration at pgs. 66-67.

6. Mr. Marasco was simply asked if he would be interested in handling a negligence case against the Defendant, and was shocked that Ms. Bass had never prosecuted a professional negligence claim against a Certified Public Accounting firm. There is certainly nothing confidential about that revelation.

Q. Do you remember what we discussed at that meeting?

A. Vaguely.

Q. Okay. What do you vaguely remember?

A. I remember that you were inquiring whether I would be interested in handling a negligence case against the Rizzo firm, and I guess I was a little shocked you had never prosecuted a professional negligence case against a CPA firm...

*See* Exhibit "A" to the Bass Reply Declaration at pgs. 68-69.

7. Mr. Marasco definitively testified that anything he discussed with Ms. Bass was not confidential nor did it impair his ability to serve as an expert for the Defendants.

Q. Okay. Do you remember discussing the particular merits of this particular case?

A. I remember there was an issue about deferred revenue and financial statements.

Q. Okay. Would that have been considered confidential information?

MR. CRONMILLER: Object to form.

A. ***I don't believe there's anything confidential that was discussed that impairs my ability to rebut this particular matter.***

*See* Exhibit "A" to the Bass Reply Declaration at p. 69.

8. Mr. Marasco was nothing but forthright throughout his deposition and clearly articulated that nothing confidential was received or shared.

> Q. Okay. So there might have been confidential information but nothing that you believe impairs your ability to provide testimony?
>
> MR. CRONMILLER: Object to the form.
>
> A. ***I don't have any documentation from that meeting. I don't have any meeting notes, nor do I have any special information.*** My rebuttal report is to rebut the opposing expert's reports. I don't believe there's anything that may have been garnered out of that meeting that would put me at some competitive edge.

*See* Exhibit "A" to the Bass Reply Declaration at pgs. 69-70.

> *****
>
> Q. Okay. At the time you entered into this agreement [referring to the engagement with Barclay Damon], did you disclose information that was discussed at the meeting with myself and Mr. Giordano?
>
> MR. CRONMILLER: Object to form.
>
> A. No ma'am.
>
> Q. Were you aware of it at the time?
>
> MR. CRONMILLER: Object to form.
>
> A. I don't follow the question. Was I aware of it at the time, what do you mean? I'm not trying to be difficult. I just don't follow the question.
>
> Q. I understand. I understand. It's inartful.
>
> As I understand your testimony today, you don't recall whether any confidential information was exchanged at that meeting. Is that a fair summary of your testimony today?
>
> MR. CRONMILLER: Object to form.
>
> A. ***I don't believe there was anything confidential shared.*** You said you were going to ---you wanted to pursue a malpractice matter against a CPA firm.
>
> Q. So do you recall reviewing financial documents at that meeting?

A. I don't recall. If I did, they were never retained. ***The case----I never heard back. Nothing ever ensued.*** We don't keep information if we're not retained. We shred documents.

Q. Do you recall what, if any, other documents you reviewed during our meeting?

MR. CRONMILLER: Form objection.

***A. I don't recall if you shared documents with me or put them on. The only thing I can recollect is there was a discussion with Mr. Giordano, and maybe even Mr. Castor, about deferred revenue, financial statements, and so forth.***

*See* Exhibit "A" to the Bass Reply Declaration at pgs. 70-72.

9. Appropriately, Mr. Marasco was shocked to learn that information provided during a meeting to discuss whether he would be retained, for which he was never paid, might have been utilized in drafting a complaint (despite the fact that there's no proof that the complaint in fact was drafted utilizing any guidance or information garnered from Mr. Marasco).

Q. Would it be an impermissible conflict of interest if you in fact provided guidance with respect to the drafting of the Summons and Complaint in this case and then served as a rebuttal expert as against the party you provided that guidance to?

MR. CRONMILLER: Form objection.

A. I guess I would be surprised and taken aback that someone took information that I provided, produced a Complaint without ever retaining me. That would cause me more angst than what you've just described.

We've never had a situation where integrity has been called into play. And if you're now telling me that you used information that was verbally conveyed in a meeting and drafted a Complaint based on that without ever formally retaining me, I have a big problem.

*See* Exhibit "A" attached to the Bass Reply Declaration at pgs. 72-73.

A. The ground rules? We were having a discussion about potentially retaining me on a case.

Q. Right.

A. The ground rules were you were going to pick my brain, steal information, and never retain me, that's what I'm hearing, and I have a big problem with that.

Q. Okay. What's your problem with that?

A. That's not having—

Q. What's your problem with that?

MR. CRONMILLER: Form objection.

A. I just don't think that's---I don't think that acts with a lot of integrity.

*See* Exhibit "A" attached to the Bass Reply Declaration at p. 74.

10. The Trustee and Ms. Bass have completely failed to meet the Trustee's burden of proving 1) it was objectively reasonable to conclude that a confidential relationship existed with Mr. Marasco and 2) that confidential or privileged information was disclosed to Mr. Marasco. *See* the Defendant's Memorandum of Law in Opposition to the Motion to Disqualify. Instead, Ms. Bass continues to offer nothing more than self-serving contentions that confidential information was communicated and shared without offering an iota of proof as to what confidences were discussed and what confidential documents were provided to Mr. Marasco.

11. The Trustee's concocted arguments, together with the baseless assertions Ms. Bass makes about Mr. Marasco instructing "Defendant's counsel as to what to seek during discovery in developing its theories" are utterly false, unsupported by the evidence and that lack any foundation whatsoever. *See* Bass Declaration at ¶16.

12. There was no confidential relationship, no disclosure of confidential information and no violation of the American Institute of Certified Public Accountants ("AICPA") Code of Professional Conduct.

Q. Are you in violation of the AICPA by preparing this rebuttal report in light of the conference that you had with myself and Mr. Giordano in 2016?

MR. CRONMILLER: Form objection.

A. No ma'am.

Q. Is there an appearance of impropriety or a conflict of interest in connection with the same?



22111069.1

MR. CRONMILLER: Form objection.

***A.*** ***Not in my opinion. I disclosed it to counsel. I had no information from that meeting, and I garnered nothing confidential that would put me in any way in an advantageous position.***

Q. I understand you're testifying now that you gained nothing confidential from that, but wasn't' it in your earlier testimony that you don't recall everything that was discussed?

MR. CRONMILLER: Objection. Form.

***A.*** ***Well, if I don't recall, it, I couldn't have used in in this report.***

Q. Why couldn't you have used it in this report?

A. Because I don't remember what we discussed specifically in 2016, other than the fact---other than if there was a potential case that you were going to litigate against the Rizzo firm.

*See* Marasco Transcript attached to the Reply Bass Declaration at pgs. 75-76.

13. The Trustee's motion is not made in good faith, is completely frivolous and is wholly meritless. Accordingly, it should be dismissed in its entirety.[2]

**WHEREFORE**, Defendant respectfully requests the Court deny the Plaintiff's motion to disqualify the Defendant's expert in its entirety, together with such other and further and additional relief as this Court deems just and proper.

Dated: February 9, 2021

By: *<u>/s/Thomas B. Cronmiller</u>*
Thomas B. Cronmiller
**BARCLAY DAMON LLP**
*Attorneys for Defendant*
Office and Post Office Address
100 Chestnut Street, Suite 2000
Rochester, New York 14604
Telephone: (585) 295-4424
Email: tcromiller@barclaydamon.com

[2] The Defendant does not waive and reserves its right to move to preclude and/or strike all questions posed and responses given during Mr. Marasco's deposition.