UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

      TURKEY LAKE, LLC, et al.,                      Case No. 15-12091
                                          Chapter 11
                        Debtor.         (Jointly Administered)

_____

      ANTHONY GIORDANO, TRUSTEE
                              Plaintiff(s),
      v.
                                                Adv. No. 17-90063
      RIZZO, DIGIACCO, HERN &
      BANIEWICZ CPAS, PLLC,
                           Defendant(s).

_____

APPEARANCES:

Maureen Bass, Esq.
Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP
*Attorneys for the Plaintiff*
160 Linden Oaks, Suite E
Rochester, New York 14625

Jeffrey A. Dove, Esq.
Thomas B. Cronmiller, Esq.
Roy Z. Rotenberg, Esq.
Barclay Damon, LLP
*Attorneys for Defendant*
2000 Five Star Bank Plaza 100 Chestnut Street
Rochester, New York 14604

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Currently before the Court is Rizzo, DiGiacco, Hern & Baniewicz, CPAs, PLLC's

("Defendant" or "RDHB") motion to dismiss this adversary proceeding based upon Anthony

Giordano, Trustee's ("Plaintiff" or "Trustee") alleged spoliation of evidence. In the alternative,

RDHB requests that an adverse inference be given at trial. The Court has jurisdiction pursuant to

28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b). For the reasons that follow, the Court finds

that the Plaintiff allowed relevant documents to be discarded and that a permissive adverse inference is the appropriate remedy.

## FACTS

1. The Debtor and twenty-one (21)[1] of its affiliates commenced Chapter 11 proceedings[2] on October 20, 2015.  (BKR Doc. 1).

2. By Order dated October 22, 2015, the Court granted the request for joint administration with Case No. 15-12091 being designated the Main Case.  (BKR Doc. 29).

3. Michael Linehan ("Linehan") is the former co-owner[3] of the Debtor and signed the Corporate Resolution at filing.  (BKR Doc. 3).

4. Linehan is the principal of the Reorganized Debtor.  (ECF No. 53, Declaration of Maureen Bass, Esq., ¶ 3).

5. On February 11, 2016, Linehan filed an unsecured proof of claim in the amount of $807,077.16.  (Claim No. 35-1).

---

[1] Debtors, along with the last four digits of each Debtor's tax identification number are: Turkey Lake, LLC (3488) ("Turkey Lake"); Premier Laser Spa of Albany, LLC (3453) ("Albany Laser Spa"); Cleveland Laser Spa, LLC (5481) ("Cleveland Laser Spa"); Columbus Laser Spa, LLC (3998) ("Columbus Laser Spa"); Lexington Laser Spa, LLC (6290) ("Lexington Laser Spa"); Nashville Laser Spa, LLC (5715) ("Nashville Laser Spa"); Premier Laser Spa of Baltimore, LLC (6976) ("Baltimore Laser Spa of Boston, LLC (4240) ("Burlington Laser Spa"); Premier Laser Spa of Boston II, LLC (4998) ("Newton Laser Spa"); Premier Laser Spa of Cincinnati, LLC (7076) ("Cincinnati Laser Spa"); Premier Laser Spa of Greenville, LLC (1316) ("Greenville Laser Spa"); Premier Laser Spa of Indianapolis, LLC (4868) ("Indianapolis Laser Spa"); Knoxville Laser Spa, LLC (2122) ("Knoxville Laser Spa"); Premier Laser Spa of Louisville, LLC (6402) ("Louisville Laser Spa"); Premier Laser Spa of Pittsburgh, LLC (8087) ("Pittsburgh Laser Spa"); Premier Laser Spa of Virginia, LLC (4140) ("Virginia Beach Laser Spa"); Syracuse Laser Spa, LLC (6793) ("Syracuse Laser Spa"); Premier Laser Spa of Orlando, LLC (1227) ("Orlando Laser Spa"); Premier Laser Spa of St. Louis, LLC (2047) ("St. Louis Laser Spa"); Premier Laser Spa of Kansas City, LLC (7938) ("Kansas City Laser Spa"); Premier Laser Spa of Richmond, LLC (4482) ("Richmond Laser Spa"); Premier Laser Spa of Columbia, LLC (3919) ("Columbia Laser Spa").

[2] Documents in the main case are referenced as "BKR Doc. ___" and those in the adversary proceeding are referenced as "ECF No.____."

[3] Linehan co-owned the Debtor with Edward Naylon ("Naylon").

6.  On January 22, 2016, the Debtor filed its disclosure statement and plan.  (BKR  Doc.

    260).

7.  The disclosure statement provides in relevant part:

> The Reorganized Debtor shall cooperate in a commercially
> reasonable manner and in good faith with the Unsecured Creditor
> Trustee to assure that the Unsecured Creditor Trustee has full and
> complete access to Debtors' books and records in connection with
> its duty to prosecute the Transferred Causes of Action . . . the
> Reorganized Debtor shall (i) preserve all records and documents
> (including any electronic records and documents) related to the
> Transferred Causes of Action until the second $(2^{nd})^{4}$ anniversary of
> the Effective Date, or if the actions related to the Transferred
> Causes of Action remain pending as of such date, until the
> Unsecured Creditor Trustee notifies the Reorganized Debtor that
> such records are no longer required to be preseved; and (ii) provide
> the Unsecured Creditor Trustee with reasonable access to review
> and copy such records and documents . . . ."

*Id*. at Pg. 26.

8.  On March 15, 2016, the Debtor filed the Turkey Lake Unsecured Creditor Trust

    Declaration[5] which indicates that as of March 16, 2016, Anthony Giordano would be the

    Trustee.  (BKR Doc. 303).

---

[4] On the 2nd anniversary of the effective date, litigation on the causes of action was still pending and therefore the Reorganized Debtor's duties continued.

[5] The Declaration states in relevant part:

  2.2    <u>Administration by Trustee and General Powers.</u> The Turkey Lake Unsecured Creditor Trust shall be administered by the Trustee . . . .   [T]he Trustee shall be the Estate representative designated to prosecute any and all Transferred Causes of Action, subject to Section 4.3 of the Joint Plan. Without limiting the generality of the foregoing, the Trustee shall . . . (ii) have the sole power and authority to evaluate and determine strategy with respect to the disposition of the Transferred Causes of Action and to litigate, settle, transfer, release or abandon any such Transferred Causes of Action on behalf of the Turkey Lake Unsecured Creditor Trust . . . .

  2.16   <u>Preservation of Privilege.</u> Any attorney-client privilege, work-product privilege, or other privilege or immunity in effect with respect to any documents or communications (whether written or oral), and any causes of action and other assets transferred to the Turkey Lake Unsecured Creditor Trust (the "Privileges") shall vest in the Trustee and his representatives to the full extent permitted by law. Debtors shall be deemed to irrevocably transfer to Trustee, as legal successor, all rights of Debtors and the Estate to exercise or waive any Privileges. This transfer is self-executing, provided however, that

9.  The Trustee has a degree in business administration, is a non-practicing CPA and was
    CFO of the Debtor prior to the filing.  (ECF No. 53, Ex. M).

10. The Trustee was appointed on March 16, 2016 by the Order confirming the Chapter 11
    plan.  (BKR Doc. 305).

11. Pursuant to the confirmed plan, the Reorganized Debtor is the "successor in interest" and
    delegated the specific authority to litigate any and all potential claims including the
    present matter.[6]

12. On October 20, 2017, the Trustee commenced this adversary proceeding.  (ECF No. 1).

13. The Complaint asserts that RDHB failed "to properly perform its accounting and
    assurances duties with an appropriate degree of care and knowledge that was in violation
    of both its professional responsibility and its obligations to Debtors."  *Id*. at ¶ 3.

14. There are seven (7) causes of action asserted by the Trustee.  They are negligence,
    accountant malpractice, breach of fiduciary duty (accounting services), breach of
    fiduciary duty (broker fee), negligent misrepresentation, breach of contract and unjust
    enrichment.  *Id*.

15. The Defendant filed its Answer on December 20, 2017.  (ECF No. 6).

16. On May 22, 2018, the Court issued a Scheduling Order with discovery to be completed
    by September 28, 2018.  (ECF No. 18).

---

the Trustee and Debtors are authorized and directed to take any and all necessary actions to effectuate
the transfer of such Privileges.

[6] Section 9.3 of the Confirmed Plan states in relevant part, "Preservation of Litigation Claims.  Except as otherwise
provided . . . [the] Reorganized Debtor, as the successor in interest to Debtors and their Estates, may enforce, sue on,
settle or compromise (or decline to do any of the foregoing) any or all of the litigation Claims . . . .  This specifically
includes any claims against Rizzo, DiGiacco, Hern, Baniewicz, P.C. and its principals and employees."  (BKR Docs.
259, 305).

17. On June 8, 2018, the Defendant served the Plaintiff with the First Request for the
Production of Documents and Things. (ECF No. 53 Declaration of Roy Z. Rotenberg,
Esq. ¶32).

18. On or about July 19, 2018, the Defendant served a Subpoena to testify and produce
certain documents on Linehan. (ECF No. 53, Ex. D).

19. On August 13, 2018, the Trustee responded to the Subpoena[7] from the Defendant. *Id*. at
Ex. J.

20. On August 28, 2018, RDHB filed a letter indicating that the parties had agreed to adjourn
certain depositions and requested that, on consent of the Plaintiff, the discovery deadline
be extended. (ECF No. 28).

21. The Court granted the request and extended discovery to November 30, 2018 with a
status conference set for November 28, 2018.

22. On October 16, 2018, Defendant's counsel deposed Linehan. (ECF No. 53, Ex. E).

23. At the deposition, Linehan provided Defendant's counsel with a thumb drive and set of
keys for a U-Haul Storage Facility "that contains documents related to the documents
[the Defendant] requested." *Id*.

24. Linehan had a set of keys to the storage facility as well.[8] *Id*.

---

[7] The Trustee's response indicates he "will produce responsive documents only to the extent that such documents are
in the possession, custody, or control of the Plaintiff, as set forth in the Civil Rules. **Plaintiff's possession, custody,
or control does not include any constructive possession that may be conferred by Plaintiff's right or power to
compel the production of documents or information from third parties or to request their production from the
above-captioned Debtors or the entities that purchased any of the Debtors' books or records.**" ECF No. 41.
(emphasis in original).

[8] It appears there were three (3) sets of keys to the storage unit. When asked at the hearing how Linehan got into the
storage unit to dispose of the documents, Plaintiff's counsel responded, "my guess would be that he had three (3) keys,
your Honor, that he kept one for himself and that he brought to the deposition one for plaintiff's counsel and one for
defendant's counsel." The Court then stated, "we assume there are three keys . . ." as both the Trustee and Defendant
indicated they did not provide Linehan with the key he used for entry. ECF No. 70 at 3:15 – 3:58.

25. The November 28, 2018 hearing was held and discovery was extended to February 28, 2019.  A status conference was set for February 26, 2019.

26. On February 26, 2019, an adjourned hearing was held and discovery was extended to June 28, 2019.  A conference was set for June 26, 2019.

27. On March 11, 2019, the Defendant filed a letter with the Court indicating that a proposed scheduling order had been provided to the Plaintiff on February 26, 2019.  A follow up was sent on March 8, 2019 but no response was received from the Trustee.  (ECF No. 29).

28. On March 11, 2019, the Plaintiff's attorney[9] responded that the Trustee would not consent to the entry of the scheduling order proposed by the Defendant.  The Plaintiff indicated "we will continue to discuss the matter with Mr. Rotenberg and submit a proposed scheduling order to the Court should the parties come to an agreement thereon." (ECF No. 30 ¶ 3).

29. On June 26, 2019, a status conference was held and discovery was extended to August 30, 2019.  A further conference was set for August 28, 2019.

30. On August 28, 2019, a status conference was held and discovery was extended to December 13, 2019.  A further conference was set for December 11, 2019.

31. On November 19, 2019, the Defendant's attorneys sent a letter to Plaintiff's counsel regarding the Trustee's failure to provide responses to specific document requests.  (ECF No. 53, Ex. T).

32. The November 19, 2019 letter also indicates that RDHB's attorney went to the storage facility and found "wall to wall banker boxes full of documents in the storage facility.

---

[9] At the inception of the Adversary Proceeding, the Plaintiff was represented by Cullen and Dykman LLP, John T. Powers, Esq. and Maureen Bass, Esq.

The Plaintiff has not indicated what documents in the storage facility are responsive to the Defendant's Notice to Produce . . . .  There is absolutely nothing which would enable us to determine which documents in the banker boxes in the storage facility that the Plaintiff is claiming are responsive to the Defendant's Notice to Produce and Request for Production of Documents."  *Id*.

33. At the December 11, 2019 conference, discovery was extended to April 24, 2020 with a status conference set for April 22, 2020.

34. On April 16, 2020, the Defendant's attorney filed a letter indicating that the Plaintiff had not complied with discovery requests.  RDHB detailed the efforts made to resolve the matter prior to the scheduled Court conference and requested that the upcoming hearing be considered a "discovery conference."  (ECF No. 33).

35. The Defendant's letter also notes that Attorney Bass would be leaving Cullen and Dykman LLP but that she would be keeping this file.  *Id*.

36. At the April 22, 2020 status conference, the Court was advised that Attorney Bass and Cullen and Dykman LLP had not fully resolved the terms of separation but it was anticipated that Ms. Bass would be handling the matter.  (ECF No. 34).

37. By Order dated May 11, 2020, Ms. Bass and her new firm were substituted as counsel for the Plaintiff.  (ECF No. 37).

38. On May 13, 2020, a hearing was held and discovery was extended to June 18, 2020 with a status conference scheduled for June 17, 2020.

39. On June 15, 2020, the Defendant filed a letter detailing several discovery issues that had

   not been resolved.  This letter also provided a chronology of the actions taken by the

   parties to date.[10]  (ECF No. 40).

40. The Plaintiff replied by letter filed June 16, 2020.[11]  (ECF No. 41).

41. On June 16, 2020, the Defendant responded to the Plaintiff's letter.  (ECF No. 42).

42. At the June 17, 2020 hearing, the parties indicated that they had been discussing

   mediation and on consent the matter was assigned to mediation.  (ECF No. 43).

---

[10] The June 15, 2020 letter states in relevant part, "On December 18, 2019, I sent Ms. Bass the revised Defendant's First Set of Interrogatories.  On January 7, 2020, Ms. Bass requested an extension to February 14 to respond to the Defendant's interrogatories, proposed Expert Scheduling Order and my letter of January 3, 2020 . . . . We granted Ms. Bass the extension she requested. Ms. Bass did not indicate that she had any objection to the revised Defendant's First Set of Interrogatories. On February 12, Ms. Bass requested another extension to February 28 . . . . We granted Ms. Bass the extension she requested . . . . On February 27, attorney Matthew Roseman, of Cullen Dykman, informed me that Ms. Bass was no longer with Cullen Dykman. Mr. Roseman requested a two-week extension to March 13 to respond to the Defendant's First Set of Interrogatories in two weeks. I granted Mr. Roseman the extension he requested . . . . On March 17, I emailed Mr. Roseman asking him when he intended to respond to the Defendant's First Set of Interrogatories. Mr. Roseman informed me that they were working on responses . . . .

Pursuant to our conference with your Honor on May 13, Ms. Bass indicated that we would have the Plaintiff's answers to the Defendant's First Set of Interrogatories in two weeks.  We did not receive from Ms. Bass the Plaintiff's answers . . . . Accordingly, on May 29, 2020 I sent Ms. Bass the letter . . . indicating that if I did not receive the Plaintiff's answers to the Defendant's First Set of Interrogatories by June 5, 2020 then we would move for appropriate relief from the Court.

On June 3, 2020, I received the Plaintiff's Responses to Defendant's First Set of Interrogatories . . . . The Plaintiff refuses to respond to 14 of the 25 interrogatories. The Plaintiff has no justification in waiting almost 6 months to inform us that he is going to refuse to respond to over half of the interrogatories."  *Id*.

[11] The Plaintiff's response indicates in relevant part, "This adversary proceeding is about . . . an impermissible conflict of interest and accounting malpractice. There are no complicated factors or facts. Defendant's services are largely memorialized by documents maintained in Defendant's own files, including e-mails, engagement letters, bills, ledgers, accountings, statements, financials, projections, invoices and tax returns. Moreover, there were a limited number of people with knowledge of the Debtors' relationship with Defendant (primarily the Debtors' two owners), and all of those individuals have been deposed . . . ."

On August 18, 2018, the Trustee responded to Defendant's First Request to Plaintiff for the Production of Documents and Things, stating in sum and substance that he provided the Defendant with everything the Trustee had in his possession.  The Trustee further averred that he was not responsible for obtaining documents from any third parties. *See* Footnote 7.

43. Mediation was unsuccessful and the Court issued a further scheduling order. (ECF No. 49).

44. Pursuant to the amended scheduling order, discovery was to be completed by January 17, 2021. Plaintiff's expert was to be identified by October 8, 2020. Defendant's expert was to be identified no later than December 3, 2020. All expert depositions were to be completed by January 14, 2021. *Id.*

45. On October 28, 2020, Defendant's attorney contacted Linehan's personal attorney[12] to arrange for all of the documents in the storage facility to be copied. (ECF No. 53 Declaration of Roy Z. Rotenberg, Esq. ¶ 58).

46. On October 29, 2020, Linehan's attorney advised the Defendant that "sometime after [Defendant's attorney] was provided the key to access the storage unit . . . . Linehan wanted to stop paying the rent for the storage unit . . . . Linehan had access to help who went over to the storage unit, opened the storage unit and discarded whatever was in the storage unit." *Id.* at ¶ 59.

47. Linehan stated, "More than a year after I produced the documents to Mr. Rotenberg, I stopped paying the storage facility fee and the documents were discarded." (ECF No. 53, Declaration of Michael Linehan ¶ 7).

48. Linehan never informed the Defendant of his intention to dispose of the documents. (ECF No. 53).

49. The Trustee indicates he was never advised that the documents were going to be discarded. (ECF No. 57 Declaration of Trustee ¶ 10).

---

[12] Linehan is represented by Harris Beach PLLC, Shawn Griffin, Esq.

50. On December 22, 2020, the Defendant filed a Motion to Dismiss (the "MTD") this adversary proceeding pursuant to Rule 37(b) of the Federal Rules of Civil Procedure[13] due to its allegation that the Plaintiff had allowed certain critical evidence to be destroyed.  (ECF No. 53).

51. On January 6, 2021, the Plaintiff responded to the MTD.  (ECF No. 57).

52. On January 11, 2021, the Defendant replied.  (ECF No. 62).

53. On January 13, 2021, the Court heard the MTD.  The matter was adjourned to January 25, 2021.

54. At the January 25, 2021 hearing, both parties were given an opportunity to provide additional pleadings.  The Defendant was given until March 8, 2021 to submit its papers. The Plaintiff was to respond two (2) weeks after receipt of the Defendant's papers.

55. On February 8, 2021, the Defendant filed its supplemental pleadings.  (ECF No. 73).

56. On February 22, 2021, the Plaintiff filed its supplemental pleadings.  (ECF No.  79).

57. On February 22, 2021, the matter was fully submitted to the Court.

## ARGUMENTS

The Defendant requests this Court "dismiss the Plaintiff's Complaint with prejudice because of the destruction of documents or, in the alternative, [give] an adverse inference that the destroyed documents" would have been helpful to the Defendant's case.  (ECF No. 53).  The Defendant argues the Plaintiff failed to provide adequate responses to numerous document requests, failed to properly preserve evidence and allowed relevant documents to be discarded.

---

[13] Federal Rule of Bankruptcy Procedure ("FRBP") 7037 adopts Federal Rule of Civil Procedure 37 and is applicable to the present matter via FRBP 9014(c).

RDHB maintains that the Trustee's actions (or more precisely inaction) have prejudiced its ability to defend itself in this proceeding.

The Plaintiff asserts he has provided RDHB with all the documents in his possession. The Trustee further contends that he was not "in control" of the evidence and that he is not responsible to obtain or retain discovery from the Reorganized Debtor or Linehan.  The Plaintiff states the Defendant cannot meet the test for spoliation because RDHB had "time, possession and access" and thus "control" of the requested documents but failed to review and preserve the evidence.  Finally, the Trustee claims that the motion should be denied as untimely.

## DISCUSSION

In this Circuit, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation . . . . It has long been the rule that spoliators should not benefit from their wrongdoing . . . ." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  "A party seeking sanctions for spoliation . . . 'must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defenses such that a reasonable trier of fact could find that it would support that claim or defense.'" *Best Payphones, Inc. v. City of New York*, Appeal Nos. 1-CV-2934, 1-CV-8506, 3-CV-0192, 2016 U.S. Dist. LEXIS 25655, at *11 (E.D.N.Y. Feb. 26, 2016) (citations omitted).

### I.    *Control and the Obligation to Preserve Evidence*

#### A.  The Trustee had Control of the Evidence and therefore the Obligation to Preserve it until the Litigation Hold was released.

This Court dismisses the Trustee's attempt to shift the burden of preservation to the Defendant.  It is beyond dispute that the duty to preserve evidence arises when the party "has

notice that the evidence is relevant to the litigation . . . but also on occasion in other circumstances . . . when a party should have known that the evidence may be relevant to future litigation." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (citations omitted). The "[p]laintiff who brought the action against Defendants, had knowledge of both the timing of the lawsuit and the allegations it would be making against Defendants, and Plaintiff had a duty to preserve all relevant evidence once it decided it was going to bring an action against Defendants. Thus, Plaintiff was under an obligation to preserve the destroyed evidence." *Best Payphones, Inc.*, 2016 U.S. Dist. LEXIS 25655, at *15-16.

The requirement is clear. Once the Trustee knew the documents might be needed in litigation, he was under an obligation to preserve evidence and place a "litigation hold" on any and all documents that might be relevant to the litigation. *Id.* at *15.

### i.      *The Disclosure Statement and Confirmed Plan Confer Authority upon the Trustee and Obligations upon the Reorganized Debtor.*

The Trustee's assertion that he is not responsible for the documents or the actions of Linehan is untenable as the Plaintiff undoubtedly had control of the documents. Control "is highly fact-specific." *Signify N. Am. Corp. v. Satco Prods.*, No. 19-CV-6125, 2020 U.S. Dist. LEXIS 253846, at *9 (E.D.N.Y. Oct. 22, 2020). "The term control in the context of discovery is to be broadly construed . . . . The critical inquiry is whether the party-litigant can exercise control over the documents . . . . A party has 'control' over documents held by a non-party if it has the 'legal right or practical ability to obtain documents from [that] non-party . . . .'" *Id.* (citations omitted).

The test for "control" is "not limited to whether the party has a legal right to those documents but rather that there is 'access to the documents' and 'ability to obtain the documents.'" *New York v. Amtrak*, 233 F.R.D. 259, 268 (N.D.N.Y. 2006). "If the party from

whom production is sought does not actually have the document in hand, courts look to whether the party has control of it, construing the word 'control' broadly." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-04394, 2016 U.S. Dist. LEXIS 133564, at *17 (S.D.N.Y. Sept. 27, 2016). "If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control' even if the documents are actually in the possession of a non-party." *Id*. at *18.

In determining "a responding party's 'practical ability' to obtain documents from a non-party, courts in the Second Circuit look to the existence of cooperative agreements or contracts between the responding party and non-party, the extent to which the non-party has a stake in the outcome of the litigation and the non-party's past history of cooperating with document requests." *Signify N. Am. Corp.*, 2020 U.S. Dist. LEXIS 253846, at *9-10.

The crucial question here is whether the Trustee had the "practical ability" to obtain the evidence. He did. The duties conferred upon the parties, via the pleadings, establish that there is no daylight between the Trustee and Linehan with respect to discovery obligations. The Trustee has the authority to pursue the cause of action with blanket control of all records. The Reorganized Debtor is obligated to provide the Trustee with unfettered access to the evidence. Thus, the Plaintiff's disclaimer of any responsibility with respect to the documents in Linehan's possession is improper.

## ii.      *Linehan is a Key Player.*

To properly effectuate a litigation hold, "a party and [their] counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold' which will 'involve communicating with the 'key players' in the litigation . . . .'" *Chen v. LW Rest., Inc.*, No. 10 CV 200, 2011 U.S. Dist. LEXIS 85403, at *28- 29 (E.D.N.Y. Aug. 3, 2011) (citations

omitted).  The duty to preserve extends to key players because they are most likely to have relevant information.  *Id*. at \*29 (citations omitted).  Linehan is undoubtedly a "key player" in this matter.  He was the co-owner of the business when the Chapter 11 was filed and signed the corporate resolution at filing.  He is the CEO of the Reorganized Debtor.  He was deposed in this action and it is beyond dispute that he had relevant information.

The Trustee's obligation to preserve extends to Linehan because "it is not unusual for documents in the possession of a third party, closely connected to the litigation, to be the subject to a Rule 34 request . . . .  These cases are premised on the rationale that a third party with a substantial interest in the litigation cannot be allowed to frustrate the rules of discovery to the disadvantage of a party."  *Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 148 (S.D.N.Y. 1997) (citation omitted); *see also Luellen v. Hodge*, No. 11-CV-6144, 2014 U.S. Dist. LEXIS 42527, at \*14 (E.D.N.Y. Mar. 28, 2014) ("The fact that the documents were in the custody of a non-party is not determinative because [the] duty to preserve extends to documents in the possession of third parties so long as [the Plaintiff] had control over the documents.") (citations omitted).

Moreover, Rule 34(a) of the Federal Rules of Civil Procedure "enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained any right or ability to influence the person in whose possession the documents lie."  *Annunziato v. Collecto, Inc.*, 304 F.R.D. 360, 363 (E.D.N.Y. 2015) (citation omitted); *see New Falls Corp. v. Soni*, 18-CV-18268, 2020 U.S. Dist. LEXIS 94755, at \*15 (E.D.N.Y. May 29, 2020) ("[A]s the owner of the [non-party corporation], she has the obligation- to the extent she is claiming that she has 'never maintained' business and/or personal family related financial documents . . . which may be beyond her actual possession but over

which she retains the right or ability to influence the person in whose possession the documents lie.").

Finally, Linehan's position as an unsecured creditor is a factor to be considered when deciding if the Trustee has "control" of the evidence.  "In making this determination, courts may evaluate the degree of cooperation between the party and non-party and whether the non-party has a financial interest in the outcome of the litigation, which may further incentivize cooperation . . . .  Non-parties should bear in mind that a potential beneficiary of any judgment for the plaintiffs . . . may fairly be expected to bear certain burdens in carrying out discovery." *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-CV-2739, 2020 U.S. Dist. LEXIS 243806, at *3 (S.D.N.Y. Dec. 29, 2020) (citations omitted).  Since he filed a proof of claim in this case, Linehan will be a beneficiary if the Trustee succeeds in this proceeding.  For all these reasons, the Court finds Linehan is "key player" and the Trustee's obligation to preserve documents extended to those in Linehan's possession.

### iii.      *The Formation of a New Corporation is Not Controlling.*

The Trustee's argument that he was not responsible to obtain any documents from the new corporation is similarly unavailing.  The duties of the Reorganized Debtor in this case have been discussed and the plan clearly states that the Reorganized Debtor is to provide the Trustee with all information needed and in its possession during the discovery phase of the litigation. Moreover, case law clearly places a burden on the Trustee to preserve the documents notwithstanding the fact that a newly formed company emerged from the confirmed plan.  This issue was analyzed in the case *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007).  In *NTL, Inc.* the "new" corporation initially asserted that in light of its "limited role" in the litigation its production was "full and complete."  *Id.* at 184.  Thereafter, 23,000 boxes of files in

15

storage were discovered. The defendant indicated that to locate documents responsive to the

plaintiffs' request would be overburdensome, unrealistic and costly for a "non-party." *Id.*

The *NTL, Inc.* court rejected that argument, finding "it would be patently unfair for [the

Trustee] . . . to benefit from the artificial separation of entities that was created by the

bankruptcy." *Id.* at 196. This Court agrees with that rationale and does not accept Plaintiff's

argument that he had no responsibility to obtain the evidence because a "new entity" emerged

from the confirmed plan. Quite simply, the formation of the Reorganized Debtor is a distinction

without a difference and the Court declines to allow the Trustee to circumvent his obligations

based upon an artificial separation created by the bankruptcy.

For all these reasons, the Court finds the Trustee had to obtain and preserve the evidence

in Linehan's possession. However, there is nothing in the record that establishes the Trustee

conveyed that the documents must not be altered, discarded and/or damaged until the litigation

hold was over.

### B. The Defendant did not have "Control of the Documents" because it was not Afforded a Meaningful Opportunity to Inspect Them.

The Plaintiff spends a significant portion of its pleadings disparaging opposing counsel

and questioning why the Defendant waited so long to have the documents copied. The Plaintiff

argues that RDHB's failure to copy the documents for over a year[14] is what led to the documents

being discarded. The Plaintiff's contention that the Defendant had the key to the storage unit and

---

[14] A careful review of the timeline in question establishes that at the time of the November 2019 letter, Defendant's counsel had gone to the storage locker only to discover it was full of boxes of disorganized documents. In December 2019, the Defendant sent out interrogatories. The Plaintiff failed to respond to this request from January 2020 to June 2020. Thereafter, the case was sent to mediation which was unsuccessful and terminated in August 2020. The Defendant then contacted Linehan's personal attorney in October 2020 to arrange for copying. It was in reply to this request that Linehan's attorney advised the Defendant that the documents had been discarded. Therefore, the year that Plaintiff complains of really is approximately three (3) months. Moreover, since the Trustee failed to provide the responses in a manner that complied with discovery rules, three (3) months does not seem to be an extreme delay especially in litigation of this magnitude. *See* Footnotes 10 -11.

thus control of the documents is unconvincing because the Trustee failed to properly provide an organized reply to the discovery requests.

The Plaintiff does not dispute that the storage unit contained "wall to wall banker boxes full of documents . . . [with no indication] what documents in the storage facility are responsive to the Defendant's Notice to Produce . . . ."[15] This type of gamesmanship is exactly what the discovery rules seek to prevent.  "It is well-settled that a producing party cannot unilaterally shift the burden and expense of complying with its discovery obligations to its opponent by simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, Appeal No. 16-CV-1318, 2019 U.S. Dist. LEXIS 166373, at *68 (S.D.N.Y. Sep. 26, 2019) (citations omitted), *aff'd sub nom. Joint Stock Co. v. Infomir LLC,* 2020 U.S. Dist. LEXIS 52697 (S.D.N.Y. Mar. 26, 2020); *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2020 U.S. Dist. LEXIS 191234, at *3 (S.D.N.Y. Oct. 15, 2020).

Moreover, "a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." *Aristidou v. Aviation Port Servs., LLC*, No. 18-CV-4040, 2020 U.S. Dist. LEXIS 31348, at *24 (E.D.N.Y. Feb. 21, 2020) (citations omitted); *see also Excellent Home Care Servs. v. Fga, Inc.*, No. 13-CV-5390, 2017 U.S. Dist. LEXIS 228951, at *26-27 (E.D.N.Y. June 5, 2017) ("Thus, the argument that the plaintiff gave the defendant the chance to inspect the records itself is no justification for plaintiff's failure to provide the responsive warehouse documents to defendant . . . .  Offering to permit defendant's counsel to inspect the warehouse will not suffice; plaintiff must undertake to review and produce any relevant materials on its own."). A "'document

---

[15] *See* Fact 32.

dump' which largely left the defendant with a mass of unmanageable and unusable documents"
does not comply with the "spirit or letter of the Federal Rules of Civil Procedure." *Novak v. Yale
Univ.*, 14-CV-00153, 2015 U.S. Dist. LEXIS 157067, at *8 (D. Conn. Nov. 20, 2015).

Based upon the pleadings and precedent, Linehan should have stored the documents and
made them available to the Trustee.  The Plaintiff should then have arranged them so they were
properly responsive to the Defendant's discovery request.  This did not occur.  Rather, numerous
boxes of documents were foisted upon the Defendant with no indication of what they contained
or how they were responsive.  It is axiomatic:

> Defendants are not required, in furtherance of their own legitimate
> pre-trial discovery, to pore through a vast amount of documents
> and hazard their own opinions at which documents plaintiff
> contends relate to their factual claim.  Defendants are entitled to
> specific designation by plaintiff of which documents relate to
> which claim or claims . . . . Defendants are entitled, by pre-trial
> discovery to sharpen the focus of what the plaintiff's claims are,
> and which documents relate to those claims . . . .

*Excellent Home Care Servs.*, 2017 U.S. Dist. LEXIS 228951, at *15-16.

Here, Plaintiff disregarded not only the Rules, but the "spirit" of discovery.

The cases relied upon by the Trustee to indicate the Defendant had "control" of the
documents are factually distinguishable.  For example, in *Thiele v. Oddy's Auto & Marine*, 906
F. Supp. 158 (W.D.N.Y. 1995) the evidence destroyed was a boat.  In *Indemnity Ins. Co. of N.
Am. v. Liebert Corp.*, 96-CV-6675, 1998 U.S. Dist. LEXIS 9475 (S.D.N.Y. June 29, 1998)
several air-conditioner parts were not preserved.  In *Allstate Ins. Co. v. Hamilton Beach/Procter-
Silex, Inc.*, 473 F.3d 450 (2d Cir. 2007) it was a coffee pot, a range hood and stove.  Likewise, in
*Townes v. Cove Haven, Inc.*, No. 00-CV-5603, 2003 U.S. Dist. LEXIS 21640 (S.D.N.Y. Dec. 2,
2003), a swimming pool was implicated.  In all these cases, the evidence was easily viewed,
photographed and/or inspected.

In contrast, the issue here consists of a vast amount of paperwork placed in a storage locker. The Defendant could not have easily inspected or photographed fifty (50) banker's boxes of unlabeled and disorganized documents. This factual difference is crucial.

Other cases cited by the Plaintiff are legally dissimilar to the present matter. For example, in *Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, 13-CV-1053, 2015 U.S. Dist. LEXIS 69375 (N.D.N.Y. May 29, 2015) the District Court specifically found that at the time the emails were destroyed, no litigation hold had been established and that "neither the individual Defendants nor their Attorney had a duty to preserve [the emails] . . . ." Likewise, in *Creighton v. City of New York*, 12-CV-7454, 2017 U.S. Dist. LEXIS 21194 (S.D.N.Y. Feb. 14, 2017), the court found that the City was not under an obligation to obtain and preserve the documents from a grocery store and therefore, spoliation was not found. Here, it has been established that the Plaintiff had a duty to obtain and preserve the documents and therefore the cases he relies upon are not persuasive.

The Trustee's argument that it was RDHB's obligation to place a litigation hold on the Plaintiff's documents is simply incorrect. The Trustee had control of and an obligation to preserve the evidence. He failed to do so which in turn allowed the documents to be discarded. Thus, the first prong of the test for spoliation has been met.

## II.   *Culpable State of Mind*

When analyzing spoliation, the "culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly [or grossly negligently], even if without intent to breach a duty to preserve it, or negligently . . . . 'Courts in this circuit have found the failure to preserve evidence resulting in loss or destruction of relevant information is surely negligent, and, depending on the circumstances, may be grossly negligent.'" *Mule v. 3-D Bldg. & Constr. Mgmt.*

*Corp.*, No. 18-CV-1997, 2021 U.S. Dist. LEXIS 124711, at *28 (E.D.N.Y. July 2, 2021) (citations omitted).

"In the discovery context . . . [negligence] is the 'failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding.' 'A failure to confirm to this standard is negligence even if it results from a pure heart and an empty head.'" *In re Pfizer*, 288 F.R.D. 297, 314 (S.D.N.Y. 2013). "Gross negligence has been described as a failure to exercise even that care which a careless person would use." *FDIC v. Horn*, No. 12-CV-5958, 2015 U.S. Dist. LEXIS 44226, at *29 (E.D.N.Y. Mar. 31, 2015).[16]

When reviewing for spoliation, "[a] 'case by case approach' is utilized as the failure to produce evidence occurs 'along a continuum of fault --- ranging from innocence through the degrees of negligence to intentionally.'" *World Trade Ctrs. Ass'n v. Port Auth. of N.Y. & N.J.*, No. 15-CV-7411, 2018 U.S. Dist. LEXIS 56894, at *18-19 (S.D.N.Y. Apr. 2, 2018) (citations omitted). However, "once the duty to preserve attaches, any destruction of evidence is at a minimum, negligent; failure to preserve backup tapes following initiation of lawsuit was grossly negligent." *Thurmond v. Brown*, No. 14-CV-6465, 2016 U.S. Dist. LEXIS 45296, at *24 (W.D.N.Y. Mar. 31, 2016) (citations omitted).

The Trustee's reliance on *Golia v. Leslie Fay Co.*, No. 01-1111, 2003 U.S. Dist. LEXIS 13794 (S.D.N.Y. Aug. 7, 2003) in support of its position is unpersuasive. In *Golia*, the defendant left discovery documents in the possession of an employee. When the employee was

---

[16] The Plaintiff is an experienced businessperson and "a court may also consider a party's sophistication and resource levels to determine the spoliator's mindset." *Riveria v. Hudson Valley Hosp. Grp., Inc.*, No. 17-CV-5636, 2019 U.S. Dist. LEXIS 143086, at *20 (S.D.N.Y. Aug. 22, 2019); *Skeete v. McKinsey & Co.*, No. 91-CV-8093, 1993 U.S. Dist. LEXIS 9099, at *18-19 (S.D.N.Y. July 7, 1993) ("In assessing … state of mind, the Court has taken into consideration many factors including the explanation of the plaintiff, the sophistication of the plaintiff, her conduct during the course of discovery, the nature of the lawsuit, and the type of evidence involved."). *See* Fact 9.

terminated, she destroyed the documents.  The defendant argued it was not responsible for the

acts of the third-party employee.  The *Golia* court disagreed and found the defendant "had an

obligation to preserve the evidence . . . [and] that the defendant destroyed the documents with the

requisite degree of fault."  *Id*. at *29-30.  The *Golia* court further found the defendant was at

least grossly negligent in its neglect of discovery and "[a]s a direct result of this fault, [the

employee] had the opportunity to destroy all of the documents.  It is also undisputed that she did

so intentionally, despite knowing of the lawsuit and [the] discovery obligations . . . ."  *Id*. at *31-

32.

     In the present case, there is no question that Linehan intentionally discarded the

documents. However, he was able to do so because the Trustee failed to fulfill his obligations to

make clear to Linehan that the documents had to be retained until the Trustee advised that they

were no longer needed.  The Plaintiff inexcusably failed to take any responsibility for the

evidence pertinent to the adversary proceeding.  Instead, the Trustee  chose to leave the records

with Linehan who had a vested interest in the outcome.  The Trustee's actions (or inactions)

amount to at the very least negligence.  *Id*.; *see also Kravtsov v. Town of Greenburgh*, No. 10-

CV-3142. 2012 U.S. Dist. LEXIS 94819, at *23-24 (S.D.N.Y. July 9, 2012) ("Here I find that the

grossly negligent conduct in allowing the video to be destroyed 'rises to the egregious level . . .

where relevance is determined as a matter of law . . . .  No excuses for this egregious conduct

have been provided . . . .  An adverse inference instruction, however, is appropriate here.").

     It is clear, the Plaintiff did not "meet its obligation to participate meaningfully and fairly

in the discovery phase."  *In re Pfizer*, 288 F.R.D. at 313.  He failed to provide the Defendant

with discovery responses and neglected to notify and monitor the status of the documents in

Linehan's possession.  As previously discussed, the Trustee's position that he had no discovery

obligations beyond the documents in his possession is fundamentally flawed and is not supported

by the disclosure statement, confirmed plan or case law.

The Plaintiff's cite to *Aktas v. JMC Dev. Co.*, 09-CV-01436, 2012 U.S. Dist. LEXIS

89735 (N.D.N.Y. June 28, 2012) as supporting his position is misplaced.[17]  In *Aktas,* the plaintiff

had contracted with the defendants to renovate a summer home.  The plaintiff eventually

commenced a lawsuit against the defendants.  The defendants moved for spoliation sanctions

arguing that the plaintiff's failed to allow the defendants access to the property to inspect what

was alleged to be defective.  The District Court agreed with the defendants, stating:

> The Court finds that the plaintiffs were grossly negligent
> and knowingly altered and destroyed the defendants' work . . . .
> Plaintiffs have failed to establish that they were forced or
> compelled to destroy the evidence for any reason including,
> but not limited to, code violations or any other safety concerns.
> Moreover, even assuming that remediation was necessary, the
> record contains no evidence demonstrating that the defendants
> were aware of such urgency.  Thus, the defendants have established
> that plaintiffs acted with a degree of culpability sufficient to permit
> the imposition of sanctions by this Court.

*Id*. at *15.

The *Aktas* court concluded, "[i]n light of plaintiffs' actions regarding the preservation of critical

evidence and the prejudice that the defendants have suffered at the loss of evidence, the Court

finds that an adverse inference charge is appropriate." *Id*. at *21.

Presently, there is no demonstration that Linehan was forced to urgently discard the

documents.  The only representation in the record is that Linehan no longer wanted to pay for the

storage unit.  Moreover, it is undisputed that neither Linehan nor the Trustee advised the

Defendant that the documents were soon to be discarded.

---

[17] As previously discussed, evidence that is easily reviewed, inspected and/or photographed is readily distinguishable from the current matter.

Applying the standards developed by precedent to the facts in this matter, the Court finds that Linehan intentionally discarded the documents even if not done in bad faith but with a "pure heart and empty head." *In re Pfizer*, 288 F.R.D. at 314. The Trustee negligently failed to fulfill his obligation to adequately preserve the documents. This neglect allowed Linehan the opportunity to intentionally discard them. Thus, the second element of the test for spoliation has been met.

### III.    Relevance and Prejudice

For a spoliation determination, the documents at issue must be relevant. "It is not enough for the innocent party to show that the evidence would have been responsive to a document request. The innocent party must also show that the evidence would have been helpful in proving its claims or defenses --- i.e., that the innocent party is prejudiced without that evidence." *In re Best Payphones, Inc.*, 2016 U.S. Dist. LEXIS 25655, at *22 (citations omitted); *see also Mule v. 3-D Bldg. &* Constr., 2021 U.S. Dist. LEXIS 124711, at *47.

There is little doubt that the discarded documents were relevant. This is a malpractice action where the Plaintiff is alleging, in sum and substance, that the Defendant failed to adequately account for deferred revenue. However, through other parties, the Defendant has found documentation indicating Linehan was aware of the issue of deferred revenue in 2012.[18]

---

[18] The Due Diligence report obtained by Linehan prior to purchasing his portion of the debtor references deferred revenue. It states in relevant part:

> It was communicated to us that certain of the customers of the LaserSpa Entities will pay for a series of treatments in advance of receiving those treatments. Because LaserSpa is on the cash basis, these advance payments have been included in revenue rather than having been deferred until the service was performed as would be required under the accrual basis. It has been noted that some of these services will be performed subsequent to the closing and therefore costs will be incurred without the benefit of the revenue generated as the cash will be distributed out of the business as noted in the above. This fact only serves to strengthen the argument for the requirement of some working capital being left in the business prior to your investment.

(ECF No. 53, Ex. BB).

In addition, RDHB has e-mail communications[19] between Linehan and Naylon demonstrating Linehan's knowledge of the accounting issues. Based upon the documents submitted by RDHB, this Court finds the discarded documents would have been helpful to the Defendant's case. Thus, the final prong for spoliation has been met.

### IV. *The Defendant's Motion is Timely.*

The Plaintiff argues the MTD should be denied as untimely. The Court disagrees. The present motion was made while discovery was still open pursuant to this Court's scheduling order. The undisputed facts indicate that the RDHB discovered the documents were discarded on or about October 29, 2020. The MTD was filed on December 22, 2020. This time frame, from discovery to filing the motion, is reasonable. Moreover, pursuant to this Court's scheduling order discovery was to be completed by January 17, 2021. The Defendant's motion is timely.

### V. *Appropriate Remedy*

Having found the Plaintiff allowed the spoliation of documents that were relevant to the RDHB's defense, the only remaining issue is the appropriate sanction. Courts have "broad discretion" when determining a sanction for spoliation. *Funk v. Belneftekhim*, No. 14-CV-376,

---

[19] Other e-mail communications obtained by the Defendants, through other parties, include:

A. 8/17/12 email from Christophe Marin, manager of Syracuse laser spa, to Linehan and Naylon, providing an explanation of what deferred revenue is and that the deferred revenue of the laser spas is approximately $4 million. *Id*. at Ex. CC.

B. 8/18/12 email from Linehan to Naylon commenting on Marin's email: "This is going to be a hot point when we go to sell. . . . Going forward we need to have a good understanding of our actual deferred revenue …" *Id*.

C. 8/18/12 email from Linehan and Jordan Morgenstern (Linehan's attorney with respect to the purchase of his interest in the debtor) to all parties to the transaction "Looks like there's about $4,000,000 in pre-sold treatments (liabilities)." *Id*.

D. 8/21/12 email to Linehan from Michael R. Parrinello (who was reviewing the books and records of the Debtor as part of due diligence as requested by Linehan) discussing in detail the effect the $4,000,000 in deferred revenue would have on the Debtors business. *Id*.

2020 U.S. Dist. LEXIS 8890, at \*26 (E.D.N.Y. Jan. 17, 2020) (citations omitted).  "The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Goodyear Tire & Rubber Co.*, 167 F.3d at 779 (citations omitted). However, the Court should impose the "least harsh sanction that can provide an adequate remedy." *Id.* (citation omitted).

Based upon the facts of this case, the Court finds that a permissive adverse inference is warranted.  There is a fundamental difference between a mandatory and permissive adverse inference.  "An adverse inference instruction can be used to describe at least two different sorts of instructions. . . ." *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 392 (2d Cir. 2013).  A mandatory adverse inference is where a court advises the jury that it 'should' draw an adverse inference.  In contrast, a permissive adverse inference advises the jury that finding certain facts 'may' support further findings of fact.  *Id.* at 392-393.

Dismissal of the complaint, as requested by the Defendant, is overly severe. "[G]enerally, a court will impose the draconian sanction of dismissal or default judgment only in extreme cases, and then, only after consideration of alternative, less drastic remedies." *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475, 2015 U.S. Dist. LEXIS 113071, at \*62-63 (E.D.N.Y. Aug. 25, 2015) (citations omitted).  The Court finds less drastic remedies available and appropriate.

Additionally, the Court finds that a mandatory adverse inference would be excessive. *Doubleline Cap. L.P. v. Odebrecht Fin., Ltd.*, No. 17-CV-4576, 2021 U.S. Dist. LEXIS 60959, at \*24 (S.D.N.Y. Mar. 30, 2021) ("[An] adverse-inference [instruction] [is an] extreme sanction

that should not be given lightly . . . ." [However the court further finds that an instruction that

allows] "the parties to present evidence to the jury concerning the loss and likely relevance of

information and instructing the jury that it may consider that evidence, along with all the other

evidence in the case, in making its decision" is appropriate). *Id*. at *27 (citations omitted); *Riley*

*v. Marriott Int'l Inc.*, No. 12-CV-6242, 2014 U.S. Dist. LEXIS 135728, at *17, *19 (W.D.N.Y.

Sept. 25, 2014) ("[A]n adverse inference is a severe sanction that should be reserved for

egregious conduct . . . . [Further finding a permissive] "adverse inference will permit, but not

require, the fact finder to infer that the missing video footage would have been favorable to the

Rileys and unfavorable to Marriott.").

This Court recognizes that Linehan stored the documents for "[m]ore than a year"[20]

before they were discarded[21] demonstrating at least minimal compliance with discovery

obligations.  Therefore, a mandatory adverse inference is too harsh a remedy in this case. *Alter v.*

*Rocky Point Sch. Dist.*, No. 13-1100, 2014 U.S. Dist. LEXIS 141020, at *28 (E.D.N.Y. Sept. 30,

2014) ("The Court finds that Defendants made an attempt to comply with their discovery

obligations . . . .  However, the actions (or lack of action) of the Defendants require

accountability and necessitate a response.").

While a permissive adverse inference is a severe remedy, it is not as drastic as a

mandatory adverse inference because it allows the trier of fact to reach its own conclusions.

"The Court need not find any facts to justify such an instruction, which leaves all the fact finding

to the jury without encroachment by the court."  *Mali*, 720 F.3d at 393. (citations omitted).

---

[20] *See* Fact 47.

[21] Linehan further indicates, "At no time did Mr. Rotenberg ask or instruct me to hold these documents for any amount
of time, or indefinitely."  (ECF No. 53, Declaration of Michael Linehan ¶ 7).  Linehan appears to believe that it was
the Defendant's obligation to preserve the evidence.  As discussed, this impression is mistaken.   The Plaintiff had the
obligation to preserve the documents.

Here, a permissive adverse inference discourages activities that could lead to spoliation.

*See Pizzella v. Liberty Gas Station & Convenience Store, LLC*, 410 F.Supp. 3d 425, 435

(N.D.N.Y. 2019) ("An adverse inference instruction will deter further spoliation or non-

disclosure of evidence . . . ."); *Coale v. Metro-North R.R. Co.*, 08-CV-01307, 2016 U.S. Dist.

LEXIS 48538, at *19 (D. Conn. Apr. 11, 2016) ("Only Plaintiff's second proffered sanction of

an adverse inference instruction further each of the goals . . . ."); *Pastorello v. City of New York,*

95-CIV-470, 2003 U.S. Dist. LEXIS 5231, at *39 (S.D.N.Y. Apr. 1, 2003) ("A [limited adverse

inference charge] suffices to fulfill the deterrent, risk-shifting, and remedial purposes by

discovery sanctions.").

Next, the permissive adverse inference places the "error in judgment" on the Trustee, the

party that created the risk.  The Plaintiff was required to notify Linehan of the importance of

contacting the Trustee before any actions were taken with respect to the documents.  The Trustee

does not point to anything in the record demonstrating that he complied with this obligation,

which was an error on the Plaintiff's part.

A permissive adverse inference also "restores" the Defendant to substantially the same

position it would have been in if the evidence had not been discarded.  *See Aktas*, 2012 U.S. Dist.

LEXIS 89735 at *17.  ("An instruction to the jury that the destroyed evidence would have been

unfavorable to the party responsible for the destruction, serves to restore the prejudiced party to

the same position it would have been in absent the wrongful destruction of evidence.") (citations

omitted); *Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp. Inc.*, 212 F.R.D. 94, 106

(E.D.N.Y. 2002)  ("[A]n adverse inference provides the necessary mechanism for restoring

evidentiary balance.  The inference is adverse to the destroyer not because of any finding of

moral culpability, but because the risk that the evidence would have been detrimental rather than

favorable should fall on the party responsible for its loss."); *Essenter v. Cumberland Farms, Inc.*, No. 09-0539, 2011 U.S. Dist. LEXIS 3905, at *15 (N.D.N.Y. Jan. 14, 2011) (citations omitted).

The case *In re Celestica Inc.*, 07-CV-312, 2014 U.S. Dist. LEXIS 44871 (S.D.N.Y. Mar. 31, 2014) is instructive.  In that case, the court found "there is no question that some of the e-mails are now likely unavailable to plaintiffs and that they may have been relevant to the plaintiffs.  Accordingly, a permissive adverse inference instruction is appropriate to inform the triers of fact that they are free to draw such inferences as they deem fit under the (sic) these circumstances."  *Id*. at *10 (citations omitted).  This Court agrees with this rationale and adopts that remedy.

The awarding of fees would not be sufficient because the evidence was discarded.  If the documents had been preserved, the Court could have directed the Plaintiff to properly provide the Defendant with the papers and compensate RDHB for having had to file the motion.  The Court could have also issued monetary sanctions for each day the Plaintiff failed to properly provide the requested discovery.  However, those options were discarded along with the discovery documents.

Finally, "[a] court has a 'gut reaction' based upon years of experience as to whether a litigant has complied with discovery obligations and how hard it worked to comply . . . .  The court must determine whether the party's conduct is . . . acceptable or unacceptable . . . ." *Williams v. New York City Transit Auth*., 10 CV 0882, 2011 U.S. Dist. LEXIS 120768, at *26-27 (E.D.N.Y. Oct. 19, 2011).  If the court finds it unacceptable, the court has discretion to tailor sanctions "to ensure that spoliators do not benefit from their wrongdoing . . . . [T]he applicable sanction should be molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine." *Goodyear Tire & Rubber Co*., at 779.  Presently, the Court finds the Plaintiff's neglect

of its discovery obligations to be unacceptable and that a permissive adverse inference is the appropriate remedy.

## CONCLUSION

For all these reasons, the Court finds the Plaintiff allowed the spoliation of certain discovery documents and that a permissive adverse inference is warranted.  Thus, the Defendant's motion is granted in part and a permissive adverse inference regarding the discarded documents shall be given at trial.

So Ordered.

Dated: September 14, 2021                     /s/ Robert E. Littlefield, Jr.
Albany, New York                              Hon. Robert E. Littlefield, Jr.
                                              United States Bankruptcy Judge